FILED

MAR – 7 2006

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEB SITE

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

In re                                      )          Case No. 05-61052-B-7
                                           )
Craig L. Johnson and                       )          DC No. JES-1
Sylvia M. Johnson,                         )
                                           )
                    Debtors.               )

## MEMORANDUM DECISION REGARDING TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTION

James E. Salven, appeared as the chapter 7 trustee (the "Trustee").

Hal B. Havlisch, Esq. appeared on behalf of the debtors Craig and Sylvia Johnson (the "Debtors").

The Trustee objects to the Debtors' homestead exemption in the amount of $150,000 (the "Objection"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & (B). This Memorandum Decision contains the court's findings of fact and conclusions of law. For the reasons set forth below, the Objection will be overruled.

**Background.**

The Debtors filed a voluntary petition under chapter 7 of the Bankruptcy Code on October 13, 2005. The Debtors claimed their residence exempt under California Code of Civil Procedure § 704.730(a)(3)(B).[1] The meeting of creditors concluded on December 13, 2005. The Trustee timely filed the Objection. The Trustee's position is that the Debtors are not eligible for the $150,000 homestead exemption, and that the Debtors qualify only for a homestead exemption in the amount of $75,000 under § 704.730(a)(2).

---

[1] Unless otherwise indicated, all references to statutory law are to the California Code of Civil Procedure.



1   The Debtors contend that their homestead exemption is proper because Mrs. Johnson is

2   "disabled" and that she is unable to engage in "substantial gainful employment" as a

3   result of her disabilities..

4       The Trustee, in support of his Objection, filed a declaration and three documents

5   including a Notice of Disapproved Claims dated August 26, 2005, from the Social

6   Security Administration (the "SSA Letter"), a one-page medical report dated April 18,

7   2005, by radiologist Stuart E. Garrison, M.D. (the "Garrison Report"), and a one-page

8   medical report dated November 22, 2002, by Raul A. Perez, M.D. (the "Perez Report").

9       According to the SSA Letter, Mrs. Johnson applied for Social Security benefits

10   because she was experiencing "neck & back injury & pain, obese, headaches,

11   degenerative bones, anxiety, high blood pressure." The Social Security Administration

12   turned down her disability claim. The Administration relied on three reports[2] to decide

13   Mrs. Johnson's claim. It concluded that Mrs. Johnson did not qualify for benefits

14   because she was "*not disabled under our rules*." (Emphasis added.) However, the last

15   paragraph of the SSA Letter is somewhat conflicting, it indicates that the medical

16   evidence in Mrs. Johnson's file was "insufficient to adjudicate [her] case."

17       The Garrison report is rather short; it indicates that "[v]iews of the lumbar spine

18   show minimal degenerative change at L3-4-5 anteriorly but show no significant

19   abnormalities." Dr. Garrison concluded that Mrs. Johnson has "EARLY

20   DEGENERATIVE CHANGE IN THE LOWER LUMBAR SPINE." (Emphasis in

21   original.)

22       The Perez Report states that Mrs. Johnson had complained of pain on both sides

23   of her neck for about two months and that she denied knowing of any trauma that might

24   have caused the pain although stress, at times, caused her discomfort. It appears that Dr.

25

---

26      [2] The SSA Letter indicates that the SSA used reports from Visalia Medical Clinic,

27   Tulare District Hospital, and Humana Insurance Company.

28

Perez examined Mrs. Johnson and determined that she had a "[fair range of motion] of her neck with minimal paracervical muscle tenderness with slight muscle spasm." Dr. Perez also reports that Mrs. Johnson had "[m]inimal tenderness along her upper scapula area. [Good range of motion] of her upper extremities with good handgrip strength bilaterally" and "[n]eck pain secondary to chronic cervical strain." Dr. Perez prescribed medication, Celebrex and Flexeril, and referred Mrs. Johnson to physical therapy.

In response to the Objection, the Debtors offered various exhibits: the SSA Letter, the Garrison Report, the Perez Report, and a letter from Dr. Antonio Sanchez, M.D., dated January 11, 2006 (the "Sanchez Letter"). The Debtors also offered Mrs. Johnson's declaration (the "Johnson Declaration"), which states that Mrs. Johnson is forty years old, she has a twelfth grade education, she has six-year-old twins, and she weighs two hundred sixty-six pounds. From 1992 through 1999 Mrs. Johnson managed a mini storage facility. In 1999, Mrs. Johnson quit her job to care for her children. She apparently has not worked outside of the home or for money since 1999.

In 2002, Mrs. Johnson visited Dr. Perez for neck pain; Dr. Perez gave her medication and referred her to Dr. Nava, a physical therapist, who told her she had lost nearly 60% of her neck movement. Mrs. Johnson also had x-rays done by Dr. Garrison, who told her that "[y]ou have no cartilage in your neck; therefore causing the bones to rub together, causing spurs, resulting in pain and discomfort." In 2004, Mrs. Johnson again struggled with debilitating back pain. In April 2005, Mrs. Johnson visited Dr. Sanchez for back pain, and he diagnosed her with early degenerative change in the lower lumbar spine. Mrs. Johnson asserts that her back pain prevents her from working at any job because she cannot sit or stand for any length of time, and that her weight problem causes her to tire rather quickly.

The Sanchez Letter indicates that Mrs. Johnson suffers from "recurrent symptomatic anemia due to metrorrhagia, morbid obesity that limits functional capacity

3

1   and chronic back pain that limits her ability to sit or stand for prolonged periods." X-rays

2   taken of Mrs. Johnson's lumbar spine "demonstrates degenerative change at L3-4-5."

3   The Sanchez Letter further indicates that Mrs. Johnson is currently under treatment for

4   chronic depression and anxiety that are exacerbated by her weight and other personal

5   problems. Dr. Sanchez states that Mrs. Johnson "has been unable to maintain stable

6   work" due to her medical and emotional conditions.

7   **Analysis.**

8   　　"Exemptions serve to protect and foster a debtor's fresh start from bankruptcy."

9   *In re Rolland*, 317 B.R. 402, 412-13 (Bankr. C.D. Cal. 2004), citing *In re Hice*, 223 B.R.

10  155, 157 (Bankr. N.D. Ill. 1998).

11  　　"Under the [Bankruptcy] Code and California law, exemptions are to be construed

12  broadly and liberally in favor of the debtor." *Rolland*, 402 B.R. at 413, citing *In re Arrol*,

13  207 B.R. 662, 665 ( Bankr. N.D. Cal. 1997).

14  　　A claimed exemption is "presumptively valid." *Carter v. Anderson (In re*

15  *Carter)*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999). In *Carter*, the Ninth Circuit prescribed

16  the burdens of production and persuasion that govern the procedure for objecting to a

17  claim of exemption as follows:

18  　　　　Once an exemption has been claimed, it is the objecting party's burden (the
        trustee in this case) to prove that the exemption is not properly claimed. *See* Fed.

19  　　　　R. Bankr.P. 4003(c). Initially, this means that the objecting party has the burden
        of production and the burden of persuasion. The objecting party must produce

20  　　　　evidence to rebut the presumptively valid exemption. *In re Lester*, 141 B.R. 157,
        161 (S.D.Ohio 1991). If the objecting party can produce evidence to rebut the

21  　　　　exemption, the burden of production then shifts to the debtor to come forward
        with unequivocal evidence to demonstrate that the exemption is proper. *See In re*

22  　　　　*Moneer*, 188 B.R. 25, 28 (Bankr.N.D.Ill.1995); Fed.R.Evid. 301. The burden of
        persuasion, however, always remains with the objecting party.

23

24  　　The issue here is whether the Debtors are entitled to claim a homestead exemption

25  of $150,000 under § 704.730(a)(3)(B), or whether the homestead exemption should be

26  limited to $75,000 under § 704.730(a)(2). Section 704.730(a) provides three different

27

28  　　　　　　　　　　　　　　　　　4

exemption amounts depending on a debtor's particular circumstances, of which only two are at issue here.

Section 704.730(a)(2) allows a homestead exemption of $75,000 if,

> the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead a member of a family unit, and there is at least one member of the family unit who owns no interest in the homestead or whose only interest in the homestead is a community property interest with the judgment debtor.

The Trustee does not dispute that the Debtors qualify for a homestead exemption under § 704.730(a)(2). He asks that the exemption be allowed based on this section. However, § 704.730(a)(3)(B) allows a homestead exemption of $150,000 if,

> the judgment debtor or spouse of the judgment debtor who resides in the homestead is at the time of the attempted sale of the homestead any one of the following:
>
> *A person physically or mentally disabled and as a result of that disability is unable to engage in substantial gainful employment.* There is a rebuttable presumption affecting the burden of proof that a person receiving disability insurance benefit payments under Title II or supplemental security income payments under Title XVI of the federal Social Security Act satisfies the requirements of this paragraph as to his or her inability to engage in substantial gainful employment. (Emphasis added.)

Section 704.730(a)(3)(B) sets forth a two-part test to determine if a debtor is entitled to the $150,000 exemption. A debtor must (1) have a physical or mental disability, and (2) as a result of that disability, be unable to engage in substantial gainful employment. These two conditions must exist as of the date of the bankruptcy petition. *In re Rostler*, 169 B.R. 408, 411 (Bankr. C.D. Cal. 1994), citing *In re Dore*, 124 B.R. 94, 98 (Bankr. S.D. Cal. 1991). The Trustee therefore, as the objecting party, has the initial burden of rebutting the presumption in favor of the exemption's validity; he must make a showing that the Debtors "are unable to satisfy one or more elements of § 704.730(a)(3)(B)." *Rolland*, 317 B.R. at 419. Fed. R. Bankr.P. 4003(c).

Although the two elements are separately stated in the statute, logic suggests that they are mutually interdependent. The second element must exist "as a result of" the first element. However, a finding for the Debtors on the second element would tend to

5

1  compel a finding for the Debtors on the first element as well.  It would be almost
2  nonsensical to find that a debtor is "unable to engage in substantial gainful employment"
3  and also conclude that this condition is not caused by some physical or mental disability.
4  The term "unable" as used in the California exemption statutes relates to the claimant's
5  physical and mental abilities, and requires substantially more than a showing that the
6  claimant is merely "unemployed." *Dore*, 124 B.R. at 97 (interpreting the term "unable to
7  take care of or support himself or herself" in § 704.710(b)(2)(D)).

8      Turning to the first element of § 704.730(a)(3)(B), the Trustee asserts that Mrs.
9  Johnson is not disabled.  Section 704.730(a)(3)(B) does not define the terms "disabled" or
10 "disability."  Mental disabilities are often harder to ascertain than physical disabilities.
11 *See Rostler,* 169 B.R. at 411 (stating "[i]n general, mental disorders cannot be ascertained
12 and verified like physical illnesses because, unlike other parts of the body, the mind
13 cannot be probed by mechanical devices to obtain objective clinical manifestations of
14 mental illness.").

15     In *Rolland*, the debtor was suffering from severe depression.  Mrs. Rolland's
16 doctor testified, by declaration, that she was treating Mrs. Rolland for depression.  The
17 doctor diagnosed her as suffering from severe depression, and opined that Mrs. Rolland
18 was mentally disabled.  In *Rostler*, the debtor suffered from memory deficiency and
19 mental confusion.  Ms. Rostler's doctor diagnosed her as having Eosinophilia Myalgia
20 Syndrome ("EMS") and concluded that Ms. Rostler was incapable of substantial gainful
21 employment.  Ms. Rostler also testified that she had the symptoms of EMS when she
22 filed her petition.  In both *Rolland* and *Rostler*, each court found that the first requirement
23 of § 704.730(a)(3)(B) was satisfied.  In each case, the trustee failed to offer evidence to
24 respond to or contradict the debtor's evidence, and failed to meet his burden of proof on
25 that issue.

26     Here, the Trustee argues, based on selected portions of the SSA Letter, the
27
28                                         6

1  Garrison Report, and the Perez Report, that Mrs. Johnson is not disabled.  The Trustee
2  points out that the SSA Letter states, "you are not disabled under our rules."  The
3  Trustee's argument relies on the inverse of the presumption found in § 704.730(a)(3)(B),
4  that one who is receiving a Social Security disability benefit is presumed to be disabled
5  and unable to engage in substantial gainful employment.  In other words, the Trustee
6  asserts that because the Social Security Administration denied Mrs. Johnson's request for
7  disability benefits, she is therefore not disabled within the meaning of § 704.730(a)(3)(B).
8  The weakness of this argument is twofold:  first, the SSA Letter also states that, "[t]here
9  is medical evidence in the file, but it is insufficient evidence to adjudicate your case."
10 Second, the SSA Letter appears to relate to a period between January 1, 2003, and
11 December 31, 2004.  This bankruptcy was filed over 9 months after the period for which
12 the SSA Letter has any direct application.  Read as whole, the SSA Letter is inconclusive,
13 one way or the other, with regard to Mrs. Johnson's disability at commencement of this
14 case.

15         Based on the Garrison Report, the Trustee argues that Mrs. Johnson's spine
16 appears to have "minimal" problems with "no significant abnormalities."  However, Dr.
17 Garrison did state that Mrs. Johnson has "early degenerative change in the lower lumbar
18 spine."  This document is again, inconclusive.  The Trustee offered no other evidence to
19 contradict Dr. Garrison's diagnosis.

20         With regard to the Perez Report, the Trustee argues that Mrs. Johnson has a fair
21 range of motion of her neck, and that she has minimal muscle tenderness.  However, Dr.
22 Perez diagnosed Mrs. Johnson with "[n]eck pain secondary to chronic cervical strain."
23 This document appears to be as inconclusive as the others.  Again, the Trustee offered no
24 other evidence on the subject of Mrs. Johnson's disability.

25         Considering all three documents offered by the Trustee in support of the
26 Objection, it is not clear that those documents, and specifically the selected excerpts taken
27
28                                          7

1 therefrom, are sufficient to rebut the presumption in favor of the Debtors as stated in

2 *Carter*. However, the presumption becomes irrelevant if the court is otherwise

3 persuaded, and able to rule one way or the other, based on a preponderance of the

4 evidence.

5    In support of their exemption claim, the Debtors rely on the Johnson Declaration

6 and the Sanchez Letter in addition to the Garrison Report, and the Perez Report discussed

7 above. The Sanchez Letter is particularly significant. On April 18, 2005, Mrs. Johnson

8 went to Dr. Sanchez for back pain. Dr. Sanchez noted that Mrs. Johnson suffers from

9 multiple medical conditions including: (1) recurrent symptomatic anemia due to

10 metrorrhagia, (2) morbid obesity that limits functional capacity, (3) chronic back pain that

11 limits her ability to sit or stand for prolonged periods, (4) degenerative change of her

12 lumbar spine at L3-4-5, and (5) chronic depression and anxiety that are exacerbated by

13 her weight and other personal problems. The Sanchez Letter further indicates that Mrs.

14 Johnson has been unable to maintain stable work because of her medical and emotional

15 conditions. Dr. Sanchez's comments are corroborated by the Johnson Declaration which

16 states that Mrs. Johnson is unable to work because her back pain prevents her from sitting

17 or standing for any length of time. The Sanchez Letter is consistent with the Debtors'

18 Schedule I and Statement of Financial Affairs, which states that Mrs. Johnson is disabled,

19 receives no income in the form of wages, salary or commissions, and has not received any

20 such income during the preceding two calendar years.

21    Based on the evidence presented, the court is persuaded that Mrs. Johnson

22 suffered from multiple significant physical problems as of the petition date and that the

23 "disabled" requirement of § 704.730(a)(3)(B) has been satisfied. This finding is

24 supported by the court's analysis and resolution of the second factor; *i.e.*, whether Mrs.

25 Johnson is unable to engage in substantial gainful employment as a result of her

26 disability. Section 704.730(a)(3)(B) does not define the term "substantial gainful

27

28              8

1  employment," and California courts have provided little guidance with interpreting the
2  term.

3      In what appeared to be a case of first impression, the *Rostler* court tried to define
4  the term "substantial gainful employment" as used in § 704.730(a)(3)(B).  The court first
5  looked to the rebuttable presumption found in § 704.730(a)(3)(B), that one is presumed to
6  be unable to engage in substantial gainful employment if he/she is receiving Social
7  Security disability benefits. *Rostler*, 169 B.R. at 412.  To qualify for benefits under the
8  Social Security Act, one must be unable to engage in "substantial gainful activity."
9  Because the statutory presumption refers to the Social Security Act, and the operative
10  language in the Act and the State statute are virtually identical, the court looked to cases
11  interpreting the Social Security Act to define the term "substantial gainful employment."
12  *Id.*  Looking to the case of *Corrao v. Shalala*, 20 F.3d 943 (9th Cir. 1994),[3] for guidance,
13  the *Rostler* court determined that to meet the second requirement of § 704.730(a)(3)(B),
14  the debtor must have been unable to "(1) perform meaningful mental or physical work-
15  related activity; (2) in a competitive or self-employed position; (3) that normally results in
16  pay or profit." *Id.* at 413.

17      Before embarking on this analysis, this court would interject two caveats.  First,
18  there is no requirement that a debtor qualify for government benefits of any kind to be
19  "disabled" within the meaning of the State exemption statutes: there is no reason that a
20  debtor cannot prove "disability" without ever having applied for Social Security benefits.

21      Second, the State exemption statute, by its own terms, qualifies the term "gainful
22  employment" with the adjective "substantial."  It is clear from the statute, and the *Rostler*

23

24      [3] The *Corrao* court held that "the definition of 'substantial gainful activity' under
25  the Act focuses on the nature of the claimant's work activities." *Rostler*, 169 B.R. at 412.
   The *Corrao* court held that "work activity is 'substantial' if it involves significant
26  physical or mental activities[,]" and "[w]ork activity is 'gainful' if it is the kind of work
27  usually done for pay or profit, whether or not a profit is realized." *Id.*

28                                   9

1    test, that "any employment," or even "part-time employment" does not necessarily rise to
2    the level of "substantial" or "gainful" employment.  Even, as here, a debtor's physical and
3    mental ability to care for her children does not necessarily equate to an ability to (1) get
4    employed by an employer trying to make a profit in a competitive environment, or (2)
5    make an income from such employment that is "substantial."  The *Rostler* court observed
6    that a work activity is "substantial" if it involves significant physical or mental activities.
7    169 B.R. at 412, citing *Corrao*, 20 F.3d at 946.  However, the term "substantial" also
8    modifies the term "gainful," which suggests that the debtor must be physically, mentally
9    and emotionally able to work enough hours, at a high enough net wage, to overcome the
10   inherent costs of that employment, such as transportation and child care, and materially
11   contribute to his/her support.
12        Turning back now to the record, the Debtors produced the Sanchez Letter that
13   states Mrs. Johnson is unable to maintain stable work because of her mental and physical
14   conditions.  Again, this is consistent with Mrs. Johnson's Declaration which states that
15   back pain keeps her from working at any job because she cannot sit or stand for any
16   length of time.  The Trustee argues that Mrs. Johnson is able to take care of her children,
17   but he offers no evidence to show that Mrs. Johnson was able to engage in "substantial
18   gainful employment" at the commencement of this case.  Based upon review and
19   consideration of all the evidence, arguments, and the applicable authority, the court is
20   persuaded that Mrs. Johnson is not able to perform meaningful mental or physical work-
21   related activity, in a competitive or self-employed position, that normally results in pay or
22   profit as a result of the physical and emotional challenges in her life, which existed at the
23   commencement of this bankruptcy case.
24   / / /
25   / / /
26   / / /
27
28                                                    10

1    Accordingly, the Debtors are entitled to claim a homestead exemption in the

2 amount of $150,000 under CCP § 704.730(a)(3)(B) and the Trustee's Objection will be

3 overruled.

4    Dated: March 7, 2006

5

6

7                                    W. Richard Lee
                                     United States Bankruptcy Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                    11

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**

**CERTIFICATE OF MAILING**


The undersigned deputy clerk in the office of the United States Bankruptcy Court for the Eastern District of California hereby certifies that a copy of the document to which this certificate is attached was mailed today to the following entities listed at the address shown on the attached list or shown below.

SEE ATTACHED

**DATED:** 3/7/06

BY: _____
Deputy Clerk

**EDC 3-070 (New 4/21/00)**

Office of the US Trustee
2500 Tulare Street, Room 1401
Fresno, CA 93721

Hal Havlisch
191 W Shaw #102
Fresno, CA 93704

Craig Johnson
6030 W Dartmouth Ave
Visalia, CA 93277

Sylvia Johnson
6030 W Dartmouth Ave
Visalia, CA 93277

James Salven
PO Box 25970
Fresno, CA 93729